COMPUTER ASSISTANCE, INC.

v.

John W. MORRIS.

Civ. A. No. H–82–1236.

United States District Court,
D. Connecticut.

March 28, 1983.

John C. Yavis, Jr., Murtha, Cullina, Richter & Pinney, Mark R. Sussman, Hartford, Conn., for plaintiff.

Robert F. McWeeny, Fleischman, Sherbacow & McWeeny, Hartford, Conn., Julius Glickman, Houston, Tex., for defendant.

## RULING ON MOTION TO DISMISS OR TO TRANSFER

JOSÉ A. CABRANES, District Judge:

This action was brought by Computer Assistance, Inc. ("Computer Assistance") against John W. Morris, a former employee. In its Complaint (filed Dec. 30, 1982), Computer Assistance asserts that, upon the commencement of his employment by Computer Assistance, Morris entered into a noncompetition agreement with the plaintiff; the Complaint further alleges that, upon Morris's termination by Computer Assistance, he founded Morris Information Systems, Inc. and entered into competition with the plaintiff. Accordingly, Computer Assistance has brought this action, seeking injunctive relief and damages. It is undisputed that Computer Assistance is a Connecticut corporation with its principal place of business in West Hartford, that Morris is a citizen of Texas, that Morris was hired to manage Computer Assistance's Houston branch, and that the concern founded by Morris after his employment by Computer Assistance is a Texas corporation with its principal place of business in Houston.

On January 14, 1983, Morris filed his own action against Computer Assistance in Texas state court, an action subsequently removed by Computer Assistance to the United States District Court for the Southern District of Texas, where it is presently pending. *Morris v. Computer Assistance, Inc.*, Civ. No. H 83–655 (S.D.Tex.). In that action, Morris alleges breach of contract, wrongful discharge, and various other claims against Computer Assistance.

Finally, Morris submitted to this court a Motion to Dismiss or in the Alternative to Transfer ... (filed Feb. 4, 1983) upon which oral argument was heard on March 8, 1983. For the reasons stated below, the court concludes that the motion must be granted to the extent that this action will be transferred to the United States District Court for the Southern District of Texas.

### I. Facts

While there are live disputes concerning many of the facts in this case, the following are generally agreed upon, except where the contrary is noted. It is clear that Morris entered into employment with Computer Assistance on May 1, 1979, pursuant to an agreement reached on March 30, 1979. Complaint, ¶¶ 5–6, at 1–2; Affidavit of John W. Morris (filed Feb. 4, 1983) ("Morris Affidavit"), ¶ 3, at 1. Some portion of the negotiations leading up to the agreement occurred in Connecticut, and the agreement itself was signed by Morris in Connecticut. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss or in the Alternative to Transfer (filed Feb. 11, 1983) ("Plaintiff's Memorandum"), Exhibit A (Affidavit of Thomas P. McDonagh, Jr.), ¶ 5, at 2, and Exhibit 2. *See also* Defendant's Brief in Support of Motion to Dismiss or in the Alternative, [sic] to Transfer (filed Feb. 4, 1983) ("Defendant's Brief"), at 2. Morris contends that he came to Connecticut at the request of Thomas P. McDonagh, Jr., Computer Assistance's president. Morris Affidavit, ¶ 2, at 1. It appears that Morris was back in Connecticut, presumably having returned to Texas during the interim, on May 7–10, 1979, for purposes of signing an additional employment agreement, Defendant's Brief, at 2, or to receive training, Plaintiff's Memorandum, Exhibit A, ¶ 6, at 3, or perhaps for both reasons. At any rate, there seems to be agreement that

those dates mark Morris's only ventures into Connecticut, in connection with his employment by Computer Assistance, before 1982. Under the 1979 agreement, Morris became managing partner of Computer Assistance's Houston branch. Complaint, ¶ 5, at 1; Morris Affidavit, ¶ 3, at 1. Besides that branch, Computer Assistance has offices in Massachusetts, Rhode Island, California, Oklahoma, and Illinois. Plaintiff's Memorandum, Exhibit A, ¶ 3, at 2. As already noted, Computer Assistance's principal place of business is in Connecticut.

From May 1, 1979 through September 1982, Morris worked as Computer Assistance's Houston branch manager. Morris Affidavit, ¶ 3, at 1; Plaintiff's Memorandum, Exhibit A, ¶¶ 8–10, at 4–5. *See also* Plaintiff's Memorandum, at 4–5. Morris did not, with the exceptions noted below, visit Connecticut, although he did communicate with Computer Assistance's headquarters frequently by telephone and mail. Plaintiff's Memorandum, Exhibit A, ¶ 8, at 4; Defendant's Supplemental Reply Brief in Support of Motion to Dismiss or in the Alternative, [sic] to Transfer (filed Feb. 18, 1983) ("Defendant's Reply"), at 4.

Sometime in 1982, the relationship between Morris and Computer Assistance became strained. Just how strained it became and who was at fault are subjects of controversy. But it is clear that, on June 9–10, 1982, Morris went back to Connecticut to negotiate a new agreement with Computer Assistance. Plaintiff's Memorandum, Exhibit A, ¶ 9, at 4; Morris Affidavit, ¶ 5, at 2. Plaintiff contends that those negotiations were precipitated by Morris's dissatisfaction with the existing employment agreement. Plaintiff's Memorandum, Exhibit A, ¶ 9, at 4. Morris, on the other hand, appears to argue that a new agreement was necessitated by Computer Assistance's repudiation of the 1979 agreement. *See* Defendant's Reply, 1–2, and Exhibit 3 attached thereto. At any rate, the association between Morris and Computer Assistance ended in September 1982, whether amicably (as plaintiff contends, *see* Plaintiff's Memorandum, at 7) or not (as defendant contends, *see* Defendant's Reply, at 2). Before that dissolution, however, the parties had signed a document variously described as a memorandum of understanding, Plaintiff's Memorandum, Exhibit A, ¶ 9, at 2, or as a new agreement, Defendant's Reply, Exhibit 1.

There is no dispute that in September 1982 Morris launched his own enterprise, Morris Information Systems, Inc. ("MISI"), which directly competes with Computer Assistance in the Houston area. Complaint ¶ 5, at 2; *see* Defendant's Reply, at 10. Plaintiff alleges that that action by Morris breached the 1979 agreement between the parties, which contained a non-competition clause. Complaint, ¶¶ 7–8, at 2–3. Morris admits that his conduct would have breached that clause, were it in effect, but argues that the 1979 agreement had already been retracted by Computer Assistance and superseded by the 1982 agreement. Defendant's Reply, at 11. Morris argues that the 1982 agreement "contains [no] reference whatsoever to a non-competition agreement," Defendant's Reply, at 1.[1]

In support of his motion to dismiss, Morris contends that his contacts with the state of Connecticut were minimal, so that the assertion by this court of personal jurisdiction over him would offend due process under *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). He argues that the law applicable to this controversy is that of Texas, which is also the locus of the asserted injury. As Texas is also Morris's home state, the place of residence of many witnesses whom he intends to call at trial, one of Computer Assistance's places of business, and a locale often visited by Computer Assistance personnel who might be called to testify in this action, Morris also contends that this action might appropriately be transferred to a Texas federal court, pursuant to 28 U.S.C. § 1404(a).[2]

---

1. Defendant's statement is not accurate. *See* Defendant's Reply, Exhibit 1, at 3.

2. 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any

## II. Discussion

The motion now pending before this court is styled one to dismiss or, in the alternative, to transfer. Presumably, movant asks the court to consider, first, the question of dismissal and, then, if the motion is denied on that basis, the question of transfer. However, our discussion of the issues raised by the motion shall follow a different logic. As will be seen, the question of dismissal will not be ignored. Yet, the motion to dismiss, brought pursuant to Rule 12(b)(2), Fed.R.Civ.P., raises only the issue of this court's personal jurisdiction over defendant. To grant that motion would not be to address the merits of the case, and plaintiff could thereafter file a new action against defendant or assert the claims raised in the Complaint as counterclaims in the presently pending action brought by Morris in Texas. Thus, granting the motion to dismiss might have the same practical consequence as granting the motion to transfer.

■ In considering a transfer of venue pursuant to § 1404(a), a district court necessarily considers the convenience of witnesses. To facilitate that consideration, a movant seeking to invoke § 1404(a) on that basis must provide an affidavit specifying the witnesses whose convenience is at issue and summarizing their expected testimony. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). In opposing the motion to transfer, plaintiff stresses that defendant has failed to bear his burden of specifying such witnesses and summarizing their testimony. Plaintiff's Memorandum, at 12. However, in a document submitted several days after Plaintiff's Memorandum, defendant has set forth the names and expected testimony of some twenty-five witnesses, all but one of them residents of Texas, the twenty-fifth being a resident of Chicago. Also mentioned, but unnamed at present, are two other Chicago residents whom Morris may call to testify. Affidavit of Julius Glickman (filed Feb. 22, 1983). In light of that affidavit, defendant

has borne that part of his burden under *Factors Etc., supra.*

■ That said, it is nonetheless the case that the burden is on defendant to show that a transfer is required, and it cannot be ignored that there will be some inconvenience to plaintiff's witnesses if they must travel to Houston. On the other hand, there is considerable reason to believe that much less inconvenience would be visited upon those witnesses by transferring this action to Texas than would be the case for defendant's witnesses if this action continued in Connecticut. It is uncontested that Computer Assistance has a branch office in Houston and that its president, McDonagh, who will presumably be a witness, perhaps the principal one, for plaintiff at trial, *see* Plaintiff's Memorandum, Exhibit B (Affidavit of Mark Sussman), ¶ 3, at 2, is a frequent visitor to Texas. Morris Affidavit, ¶ 9, at 3. Of the three other witnesses mentioned thus far by plaintiff, one is a Houston resident. Plaintiff's Memorandum, Exhibit B, ¶ 5(d), at 3–4.

■ The case law brought to the court's attention by plaintiff hardly suggests that denial of defendant's motion is mandated. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1946), relied upon by plaintiff, Plaintiff's Memorandum, at 12, concerns application of the doctrine of *forum non conveniens,* not § 1404. Hence, that case does not control the one at bar. "District courts [are] given more discretion to transfer under § 1404(a) than they [have] to dismiss on grounds of *forum non conveniens.*" *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981) (citation omitted). *See also Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). *United States Barite Corp. v. M.V. Harris,* 534 F.Supp. 328, 330–331 (S.D.N.Y.1982), also cited by plaintiff, Plaintiff's Memorandum, at 12, cannot be relied upon here, for that court, in a terse ruling denying a motion to transfer, referred to *forum non conveniens* and applied *Gulf Oil Corp. v. Gilbert, supra,* and *Piper Aircraft Co. v. Rey-*

civil action to any other district or division where it might have been brought."

*no, supra,* both of which cases set standards for dismissal on grounds of *forum non conveniens.*

In *Marine Midland Bank v. Keplinger & Associates,* 488 F.Supp. 699, 704 (S.D.N.Y. 1980), the district court considered a § 1404 motion that was opposed by the movant's codefendant, who also opposed severance of their cases. Given the codefendant's position and the interest of the court in judicial economy, the motion was denied. In the case at bar, judicial economy will be served by having both this action and that brought by Morris tried in the same district, if not actually consolidated. And, of course, here there is no codefendant.

Finally, plaintiff urges reliance upon *Ingredient Technology Corp. v. Nay,* 532 F.Supp. 627, 631 (E.D.N.Y.1982), in which a motion to transfer was denied in an action brought to restrain violation of a non-competition agreement. The court held that, the fact of competition having been already shown by affidavits and depositions, the necessity of live testimony was reduced and, accordingly, the convenience of witnesses was but a minor factor for the court to consider in the exercise of its discretion under § 1404(a). The case at bar is readily distinguishable from *Ingredient Technology Corp.,* for in that case the district court had before it the only litigation arising out of the controversy. In the instant case, however, the court must take note of the action presently pending in Texas. *Factors Etc., Inc. v. Pro Arts, Inc., supra,* 579 F.2d at 219. The court must also take note of plaintiff's promise that, were defendant's motion to dismiss or transfer this action denied, plaintiff would seek transfer of the Texas action to this court. Plaintiff's Memorandum, at 5. There is every reason to believe that trial of the Texas action will require live testimony and every reason to believe that the interests of judicial economy will be served by having the two actions before the same court, which could then consider the appropriateness of consolidation. Hence, the admission by Morris of engagement in competition does not eliminate consideration of the issue of witness convenience. Accordingly, *Ingredient Technology Corp.*

does not support denial of defendant's motion here.

Computer Assistance has advanced two further reasons why the motion to transfer should be denied. First, it argues that Morris agreed to arbitration of disputes between himself and Computer Assistance in Connecticut. Plaintiff's Memorandum, at 13. But, even assuming the ongoing validity of that agreement, that argument properly addresses the question of jurisdiction, not venue. Second, plaintiff contends that "transfer of this action to Texas would unnecessarily delay [Computer Assistance's] efforts to restrain Morris's unlawful competition and to prevent further damage to its competitive position," *id.* That some delay will ensue from the granting of a transfer is indisputable. But plaintiff has offered no hint as to why that delay will work an irreparable injury. Nor has plaintiff, which could reasonably have expected that Morris would move to dismiss this action for lack of personal jurisdiction, explained why, given plaintiff's interest in expedition, this action was not brought in Texas at the outset. At any rate, in raising this question plaintiff necessarily asks the court to act equitably. In that connection, it should be noted that plaintiff seeks a preliminary injunction to restrain Morris's competition with plaintiff in Texas. Motion for Preliminary Injunction (filed Jan. 4, 1983). Of course, courts have abandoned the notion that an injunction will not issue to restrain conduct occurring outside the jurisdiction of the court. McClintock, Equity (2d Ed., 1948), § 36, at 88. But that general tendency does not mean that the older principle has no vitality today. Though the point is only a minor factor in this court's decision, it is worth observing that, *ceteris paribus,* equity is better satisfied by having an application for an injunction to run only in Texas addressed to a Texas court than by having it addressed to a court in Connecticut.

In light of the foregoing, the court concludes that defendant's motion, insofar as it seeks a transfer of this action to Texas, must be granted. We turn now to a brief

consideration of defendant's motion to dismiss.

The parties are in agreement that the question of this court's personal jurisdiction over defendant is to be decided, first, by looking to the relevant statute, Conn.Gen. Stat. § 52–59b(a), and then by considering whether assertion of personal jurisdiction over defendant would offend federal constitutional concepts of due process. *See* Plaintiff's Memorandum, at 6; Defendant's Reply, at 2–3. The parties also agree that § 52–59b(a) is modeled on the analogous New York statute, Civ.Prac.Law § 302 (McKinney 1980–1981 Supp.). Plaintiff's Memorandum, at 7; Defendant's Reply, at 3.

■ In *George Reiner & Co., Inc. v. Schwartz,* 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977), the New York Court of Appeals applied Civ.Prac.Law § 302 and found that New York courts had personal jurisdiction over a defendant who entered the state for a single day for purposes of entering into an employment with the plaintiff company, which later brought suit against the defendant for breach of contract. As in the case at bar, the defendant entered the state at the invitation and expense of the plaintiff. The holding in *George Reiner & Co., Inc.* has been approved by the Connecticut Supreme Court. *Zartolas v. Nisenfeld,* —— Conn. ——, 440 A.2d 179 (1981). Accordingly, there is no difficulty in finding a statutory basis for the assertion of personal jurisdiction over Morris in Connecticut.

Nor would such an assertion be constitutionally defective. Morris's contacts with Connecticut have been sufficient to ensure that maintenance of this action against him in the present forum would "not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940).

■ Thus, when the question of the constitutionality of an assertion of personal jurisdiction over Morris in this action is raised apart from other considerations, there can be no doubt that such jurisdiction may be maintained. Nonetheless, it is also true that the decision whether personal jurisdiction comports with due process requires assessment of many fundamentally equitable considerations. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Moreover, it should be borne in mind that "[d]ue process is flexible and calls for such procedural protection as the particular situation demands." *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), *quoting Morrisey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). That being the case, the court deems it not inappropriate to remark that, while this action *could* be maintained in Connecticut without offense to due process, the cause of due process is better served by maintenance of this action in Texas. In short, the factors cited above as dispositive of the question of transfer are not dispositive of the question of due process; but those factors do have a bearing on the question of due process. Thus, in considering the constitutional issue under *World-Wide Volkswagen v. Woodson, supra,* the court finds additional support for the equity of its decision to grant defendant's motion to transfer.

*Conclusion*

Upon a careful review of the full record of this case and after having had the benefit of argument by counsel, the court concludes, for all of the foregoing reasons, that it has personal jurisdiction over defendant, but that defendant has borne his "burden as the moving party of making out a clear-cut case for transfer," *Ruskay v. Reed,* 225 F.Supp. 581, 582 (S.D.N.Y.1963) (Feinberg, J.), and accordingly this action will be transferred to the United States District Court for the Southern District of Texas, pursuant to 28 U.S.C. § 1404(a). To that extent, defendant's Motion to Dismiss or in the Alternative to Transfer . . . is granted.

It is so ordered.